IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                 *
MILES L. WATERS,
                                 *
     Plaintiff,
                                 *
          v.                          CIVIL NO.: WDQ-08-0396
                                 *
MARYLAND DEPARTMENT OF
TRANSPORTATION, MOTOR VEHICLE    *
ADMINISTRATION, et al.,
                                 *
     Defendants.
                                 *
```

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Miles L. Waters sued the Maryland Motor Vehicle Administration ("MVA"), George Atkinson, Milton Chaffee, and Carmen Carruba ("Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] 42 U.S.C. § 1983, and 42 U.S.C. § 1981.  Pending is the Defendants' motion for summary judgment.  For the following reasons, the motion will be granted.

I.   Background

Waters, an African-American male, was an MVA facilities maintenance technician from April 1997 until he was fired in August 2006 for misusing an MVA truck.  Compl. ¶ 3.  Carruba was his immediate supervisor for the last two years of his employment.  *Id.* ¶ 8.  On February 13, 2006, Waters discovered on a worksite refrigerator a poster that implied he was in a

---

[1] 42 U.S.C. §§ 2000e *et seq.*

romantic relationship with a male co-worker.  *Id.* ¶ 11.  Waters
complained to Carruba that it was sexual harassment.  *Id.* ¶ 12.
Carruba told Waters the poster was a joke.[2]  *Id.*  Waters
discarded the poster, but later discovered another one on the
refrigerator.  *Id.*  On February 15, 2006, Waters received his
performance appraisal for 2005.  Pl. Opp., Ex. 1.2.  He received
ratings of "below standards" or "far below standards."  *Id.*

On March 6, 2006, Charles Yarbrough, MVA Warehouse Assistant
Supervisor, filed a note that Waters's girlfriend had called
saying that Waters was at her house during work hours the
previous week.  *See* Pl. Opp., Ex. 2J.  On March 13, 2006, William
Donoho, a member of the MVA Investigation & Security Services
department, wrote a memorandum to Joseph Hampton, a member of the
MVA Internal Investigations department, asking him to investigate
whether Waters had improperly used a state vehicle on a day on
which he allegedly sexually assaulted a minor.[3]  *See* Pl. Opp.,

---

[2] George Desch, Chief Investigator of the Investigation and
Security Services at MVA, stated that it was "common practice in
the warehouse to distribute jokes and flyers."  George Desch Aff.
¶ 7, Apr. 20, 2009.  Indeed, Waters testified that similar
posters had been posted before that.  Miles L. Waters Dep. 157-
58, Feb. 23, 2009.

[3] Waters's former girlfriend testified that Waters drove
either a large state of Maryland panel truck or a small, state
van to her home often; he visited her every other day from April
2005 to October 2005.  Angela Christmas Dep. 6, Mar. 16, 2009.
On or around March 6, 2006, she told Yarbrough that Waters had
driven a state truck to her home between February 25, 2006, and
February 28, 2006, and sexually assaulted her daughter while
there.  *Id.* at 8.

Ex. 2Q.

Waters complained about the poster to MVA officials.  Compl.
¶ 13.  On March 27, 2006, he filed a charge of race and sex
discrimination with the Maryland Commission on Human Relations
("MCHR").  *Id.*  Carruba directed that all non-MVA material,
including the poster, be removed from the worksite.  *Id.* ¶ 15.

Subsequently, Waters was injured on the job and told by his
doctor to do limited work.  *Id.* ¶ 16.  On April 12, 2006, Waters
told Carruba about the doctor's order, and he told Waters that he
would have no light work to assign for several days.  *Id.*  Waters
believed that Carruba had authorized medical leave for him until
the following Monday, and he took off those days.  *Id.*

Upon Waters's return to work on April 17, 2006, Carruba
asked him to sign a written reprimand for his unauthorized
absence.  *Id.* ¶ 17.  Waters said he had understood that Carruba
had authorized the leave; Carruba responded that Waters's
understanding--like his complaint about the joke--was "wrong."
*Id.*  Waters did not sign the reprimand.  *Id.* ¶ 18.  Carruba later
asked Waters to sign a rewritten reprimand.[4]  *Id.*  Waters
objected to the reprimand and filed a grievance with the MVA and
a charge of retaliation with the MCHR and Equal Employment
Opportunity Commission ("EEOC").  *Id.* ¶ 20.  After a hearing, the

---

[4] Waters believes Carruba and Atkinson, the division
manager, drafted the new reprimand.  Compl. ¶ 19.

MVA decided not to discipline Waters.[5]  *Id.* ¶ 21.

On May 4, 2006, Minnie Carter, Director of the MVA's Equal Employment Opportunity Office, responded on behalf of the MVA to the allegations in Waters's March 27, 2006, EEOC charge.  Pl. Opp., Ex. 2F.  John Kuo, then-Chief Deputy Administrator of the MVA,[6] was copied on the response.  *Id.*

On June 15, 2006, Atkinson sent a letter to Donoho asking whether Waters had violated a Governor's Executive Order by not reporting that he had been criminally charged with sexual assault.[7]  *See* Pl. Opp., Ex. 2H.

On July 7, 2006, Waters was suspended indefinitely for unauthorized personal use of a state truck.[8]  *Id.* ¶ 23.  Waters

---

[5] The MVA notified Waters of its decision in an April 28, 2006, letter.  Compl. ¶ 21.

[6] Kuo is now the Administrator.

[7] Waters has also provided a June 16, 2006, letter from defense counsel, Assistant Attorney General, Robert Cain, II, Esquire, in which Cain responded to Donoho's inquiry regarding whether Waters violated--and could be disciplined for violating-- the Executive Order.  *See* Pl. Opp., Ex. 2N.

[8] The Defendants state that Waters drove the truck to his home in Baltimore, against MVA policy.  Defs. Mot. at 2.  The MVA had installed a global positioning system (GPS) device on the truck to track its location.  Waters argues that the MVA's GPS data, on which the MVA relied, conflicted with its fuel report data.  Pl. Opp. at 12-13.  He points to an alleged error in the GPS report--on the day Waters allegedly used the truck for personal reasons--that shows the truck's ignition was "off" in one location, and the truck in a different location one hour later without the ignition ever turning "on."  *See* Pl. Opp., Ex. 2U.  Waters argues that the errors in the data are "beyond explanation," and that "human intervention" or "manipulation" are to blame.  Pl. Opp. at 13.

alleges that Atkinson and Chaffee, Chief Deputy Administrator of the MVA, recommended the charges.  *Id.*  Waters filed an internal grievance and an additional charge of retaliation with the MCHR and EEOC.  *Id.* ¶ 24.  Waters alleged that the suspension was retaliation for his previous charge of retaliation.  *Id.*

On July 10, 2006, Waters appealed his suspension to the Maryland Office of Administrative Hearings ("OAH"), and a hearing was held on July 17, 2006.  Miles L. Waters Decl. ¶ 28, June 24, 2009.  On July 20, 2006, Administrative Law Judge ("ALJ") David Hofstetter upheld the suspension pending disposition of the charges for termination.  Pl. Opp., Ex. 1 (Ex. 4).

On August 4, 2006, Waters was fired for the unauthorized use of the truck.[9]  Compl. ¶ 27; Waters Decl. ¶ 30.  Waters alleged that the termination was retaliation for his EEOC charge about the poster.  Compl. ¶ 28.  On August 11, 2006, he appealed the termination to the OAH.  Defs. Mot., Ex. 12.

On November 21, 2006, Waters had a hearing before the OAH.  Defs. Mot. at 20.  On December 18, 2006, ALJ Sondra L. Spencer upheld the termination, finding that Waters had driven the truck to Baltimore for an unauthorized purpose based on the GPS

---

[9] Chaffee and Kuo made the decision to terminate Waters for "violating the State Vehicle Fleet Policy" and his "prior disciplinary history" and "prior work performance."  Milton Chaffee Aff. ¶ 6, Apr. 15, 2009.

report.[10]   Defs. Mot., Ex. 12.   Waters filed exceptions to ALJ

Spencer's decision with the Secretary of the Maryland Department

of Budget and Management; on July 5, 2007, the Secretary upheld

the termination.   *Id.*

Waters sought judicial review of the decision in the Circuit

Court for Anne Arundel County, which affirmed the termination on

July 30, 2008.   Defs. Mot., Ex. 14.   Waters appealed to the

Maryland Court of Special Appeals; oral argument is scheduled for

October 2009.   *Id.*, Ex. 15.

In the summer of 2007, Waters--then employed by Anne Arundel

County at the Millersville Landfill--encountered two former MVA

coworkers who were subordinates of Atkinson and Chaffee.   Compl.

¶ 29.   Two days later, on September 5, 2007, Waters was fired

even though he was "well-regarded by his supervisors."   *Id.*

Waters alleges that Atkinson, Chaffee or Carruba told the County

to fire him in retaliation for his prior complaints.   *Id.*

The Defendants have provided evidence that Waters had

performance problems while with the County.   Michael Neafsey,

Landfill Supervisor for Anne Arundel County, testified that

Waters did not always do his job or follow directions, and had to

be counseled on his job duties.   Michael Neafsey Dep. 7-8, Mar.

12, 2009.   Neafsey also stated that Waters improperly took a

_____

[10] ALJ Spencer also found that the termination was not in
retaliation for Waters's EEOC charge because the random GPS check
was not limited to Waters.   Defs. Mot., Ex. 12.

landfill vehicle off-site.[11]   *Id.* at 10, 26.   He stated that Waters was fired for failing to follow orders.   *Id.* at 9.   He testified that he made the decision to fire Waters, and he did not know Chaffee or Atkinson, nor did he consult anyone from the MVA in making that decision.   *Id.* at 7, 84.

On November 14, 2007, the EEOC sent Waters right to sue letters.   On February 13, 2008, Waters filed this suit.[12]   On October 16, 2008, the Court dismissed (1) Waters's hostile work environment claims against the MVA, Carruba and Atkinson; (2) part of Waters's retaliation claim against the MVA[13]; (3) Waters's retaliation claims against Carruba; and (4) two of Waters's retaliation claims against Atkinson.   Paper Nos. 15-16.

Remaining are Waters's retaliation claims (1) under Title VII against the MVA for firing him (Count I); and (2) under 42 U.S.C. §§ 1981 and 1983 against Atkinson and Chaffee for firing him and interfering with his subsequent employment (Counts VI and

---

[11] Waters later admitted that he had taken the vehicle to a local McDonald's restaurant.   Neafsey Dep. 26; Waters Decl. ¶ 35. Waters stated that "Linda," the acting supervisor on the day Waters used the vehicle while Neafsey was gone, gave him permission to go to McDonald's.   Waters Decl. ¶ 35.

[12] Waters had filed a prior discrimination suit against the MVA, Atkinson, and two other MVA officials in April 2004.   *Waters v. Motor Vehicle Administration, et al.*, JFM-04-1254.   Judge J. Frederick Motz granted summary judgment to the defendants in that case; the Court of Appeals for the Fourth Circuit affirmed.   JFM-04-1254, Paper Nos. 47, 52, 54.

[13] The Court dismissed his retaliation claim based on (1) the proposed--but never executed--reprimand and suspension, and (2) his termination from his job with Anne Arundel County.   Paper No. 15 at 10, 14.

VII).  On April 21, 2009, the Defendants moved for summary judgment.  On August 13, 2009, the Court held a hearing on the Defendants' motion.

II.  Analysis

A.  Standard of Review

Rule 56(c) permits summary judgment when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the facts and reasonable inferences therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  The opposing party, however, must produce evidence upon which a reasonable factfinder could rely.  *Celotex*, 477 U.S. at 324.  A mere "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.  MVA

To establish a prima facie case of retaliation, Waters must show that (1) he engaged in a protected activity; (2) the MVA acted adversely against him; and (3) there is a causal connection

8

between the protected activity and the adverse employment action. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).  The Defendants argue that Waters has not shown a causal connection because Chaffee, who fired Waters, did not know Waters had filed the EEOC charge.  Defs. Mot. at 26.

To prove a causal connection, Waters must show that the MVA fired him because he engaged in protected activity.  *Holland*, 487 F.3d at 218.  He must show that the person who fired him knew that he engaged in the protected activity.  *Id.*; *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006).  Chaffee and Kuo terminated Waters.  Chaffee Aff. ¶ 6.

Chaffee affirmed that when he fired Waters he did not know he had filed an EEOC charge.  Chaffee Aff. ¶¶ 6, 9.  Waters testified that he did not remember if he mentioned the charge to Atkinson or Chaffee.  Waters Dep. 167.  Because Kuo was copied on Carter's May 4, 2006, response to Waters's EEOC charge, more than two months before Waters was fired and, arguably knew of the charge when he fired Waters, Pl. Opp., Ex. 2F, Waters has stated a prima facie case.

The burden then shifts to the MVA to show a legitimate, nondiscriminatory reason for firing Waters.  *Holland*, 487 F.3d at 218; *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).  As noted above, the MVA fired Waters for unauthorized use of a state

truck, and his prior disciplinary history and work performance. Chaffee Aff. ¶ 6; Pl. Opp., Ex. 2 (Ex. 5) (MVA Charges for Termination).

Accordingly, the burden shifts back to Waters "to show that the reason is 'mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct.'" *Holland*, 487 F.3d at 218 (*quoting Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)).

Waters has not provided evidence that the MVA's reason for firing him--misuse of an official vehicle--was pretext.

C.   Atkinson

The Defendants argue that the § 1981 and § 1983 claims against Atkinson for Waters's termination from the MVA and Anne Arundel County fail because Atkinson (1) had no authority to fire Waters, and (2) never told Neafsey to fire Waters from his County job.   Defs. Mot. at 28.

Waters sued Atkinson in his individual capacity.   Compl. ¶ 5.   Individual liability under § 1983 lies only when "it is affirmatively shown that the official charged acted personally in the deprivation of rights." *De Ventura v. Keith*, 169 F. Supp. 2d 390, 395 (D. Md. 2001) (*quoting Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *Roberts v. Prince George's County, Maryland*, 157 F. Supp. 2d 607, 609 (D. Md. 2001).   The official

must have participated in the deprivation.[14]  *De Ventura*, 169 F. Supp. 2d at 395.

Atkinson testified that he was not involved in the decision to terminate Waters.  George Atkinson Dep. 83, Feb. 27, 2009. Neafsey testified that the only person he consulted before firing Waters from the County was Rich Bowen, Manager of the Millersville Landfill.  Neafsey Dep. 29.  He stated that he did not speak with anyone from the Department of Transportation or MVA.  *Id.* at 84.  Waters has provided no contrary evidence. Thus, Atkinson will be granted summary judgment on Counts VI and VII.

D.  Chaffee

The Defendants argue that Waters's claims against Chaffee must fail because (1) Chaffee fired Waters for cause, (2) Chaffee had nothing to do with Waters's termination from Anne Arundel County, and (3) there is no causal connection because Chaffee did not know Waters had filed an EEOC charge.

As noted above, Chaffee has affirmed that he did not know

---

[14] *Accord Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 10 (1st Cir. 2007) (officials "may only be held liable under § 1983 in their personal capacity if the plaintiff can establish that h[is] constitutional injury resulted from the direct acts or omissions of the official, or from indirect 'conduct that amounts to condonation or tacit authorization") (*quoting Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005)).

Waters had filed an EEOC charge.[15]  Chaffee Aff. ¶ 9.  Also, (1)
Chaffee affirmed that before this suit he did not know Waters had
worked for--or been fired from--Anne Arundel County, *id.* ¶ 12,
and, as noted above, (2) Neafsey did not consult anyone from the
MVA before terminating Waters.  Neafsey Dep. 29, 84.  Waters has
not provided contrary evidence; he has not shown that Chaffee
fired him or influenced his termination from Anne Arundel County.
Thus, summary judgment must be entered for Chaffee.

III. Conclusion

For the reasons discussed above, the Defendants' motion for
summary judgment will be granted.


August 26, 2009                      /s/
Date                         William D. Quarles, Jr.
                             United States District Judge

---

[15] Claims brought under Title VII, § 1983, and § 1981 are
analyzed under the same framework.  *James v. Booz-Allen &
Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004); *Causey v.
Balog*, 162 F.3d 795, 804 (4th Cir. 1998); *Gairola v. Com. of
Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir.
1985).